**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL OWUSU | : | |
| | : | Civil Action No.: <u>23-cv-0074</u> |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LASERSHIP, INC. | : | |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR AN ORDER APPROVING SETTLEMENT**</u>

Respectfully submitted,

**MARZZACCO NIVEN & ASSOCIATES**

By:   <u>*/s/ Benjamin Salvina*</u>
Benjamin Salvina, Esq.
945 East Park Drive, Suite 103
Harrisburg, PA 17111
TEL:  717-231-1640
FAX: 717-231-1650
<u>bsalvina@klnivenlaw.com</u>
*Attorney for Plaintiff*

Dated:  January 28, 2024

# TABLE OF CONTENTS

I.  INTRODUCTION ..............................................................................................1

II.  THE SETTLEMENT AGREEMENT REPRESENTS A FAIR AND
REASONABLE RESOLUTION OF A BONA FIDE DISPUTE OVER FLSA
PROVISIONS ....................................................................................................2

   A.  The Settlement Agreement Concerns a Bona Fide Dispute ............................2

   B.  The Settlement Is Fair and Reasonable to the Plaintiff-Employee .................4

     1.  The complexity, expense, and likely duration of the litigation (factor 1).....5

     2.  The reaction of the class to the settlement (factor 2) ...................................6

     3.  Stage of the proceedings and the amount of discovery completed (factor 3)
       6

     4.  Risks of establishing liability and damages (factors 4 and 5)......................7

     5.  Risks of maintaining the class action through the trial (factor 6) ................8

     6.  Ability of the Defendant to withstand a greater judgment (factor 7)............8

     7.  The range of reasonableness of the settlement fund in light of the best
     possible recovery and all the attendant risks of litigation (factors 8 and 9)........8

   C.  The Agreement Does Not Frustrate the Implementation of the FLSA in the
Workplace .......................................................................................................10

     1.  Confidentiality and Non-Disparagement ....................................................10

     2.  Release of Claims ........................................................................................11

   D.  The Award of Attorneys' Fees to Plaintiff's Counsel is Fair and Reasonable
Considering the Risk Involved, the Work Performed, and the Considerable
Result Achieved ..............................................................................................13

     1.  The Size of the Fund Created and the Number of Persons Benefitted, and
     the Presence or Absence of Substantial Objections by Members of the Class to
     the Settlement Terms and/or Fees Requested by Counsel (Factors 1 and 2)....15

     2.  The Skill and Efficiency of the Attorneys Involved (Factor 3) ..................15

3.  The Complexity and Duration of the Litigation (Factor 4)..........................15

4.  Risk of Nonpayment (Factor 5)....................................................................16

5.  Amount of Time Devoted to the Case by Plaintiff's Counsel and Awards in Similar Cases (Factors 6 and 7).........................................................................16

III.  CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

## Cases

Adams, et al. v. Bayview Asset Management, LLC, 11 F. Supp. 3d 474 (E.D. Pa. 2014) ................................................................................................. 13, 14

Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746 (E.D. Pa. 2016) ........8

Aros v. United Rentals, Inc., No. 3:10-cv-73, 2012 WL 3060470 (D. Conn. July 26, 2012) ....................................................................................................13

Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728 (1981) ..............................5

Berger v. Bell-Mark Techs. Corp., No. 1:17-CV-1836, 2019 WL 1922325 (M.D. Pa. Apr. 30, 2019) ...............................................................................11

Brown v. Lyndon City Line Diner, Inc., No. 19-cv-1227, 2021 WL 3492990 (M.D. Pa. Aug. 9, 2021) ........................................................................... 10, 11

Brumley v. Camin Cargo Control, Inc., Nos. 08-cv-1798, 10-cv-2461, 09-cv-6182, 2012 WL 1019337 (D.N.J. March 26, 2012)................................................. 3, 5, 15

Carts v. Wings Over Happy Valley MDF, LLC, No. 17-cv-915, 2023 WL 4238490 (M.D. Pa. June 28, 2023) ................................................................. 12, 14, 16, 17

City of Detroit v. Grinnell  Corp., 495 F.2d 448 (2d Cir. 1974) .............................10

Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975)........................................................4, 5

Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000) .........................14

Haley v. Bell-Mark Techs. Corp., No. 17-cv-1775, 2019 WL 1925116 (M.D. Pa. May 6, 2019)........................................................................................ 11, 12

Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773 (E.D. Pa. 2016) ....................14

In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109 (D.N.J. 2002) .........................15

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516 (3d Cir. 2004)......................6

Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982).... 1, 2, 3

Lyons v. Gerhard's Inc., No. 14-cv-6693, 2015 WL 4378514 (E.D. Pa. July 16,

2015) ...........................................................................................................2

McGee v. Ann's Choice, Inc., No. 12-cv-2664, 2014 WL 2514582 (E.D. Pa. June
    4, 2014) ........................................................................................... 3, 11

Officers for Justice v. Civil Service Comm'n, 688 F.2d 615 (9th Cir. 1982), cert.
    denied, 459 U.S. 1217 (1983) ..............................................................10

**Statutes**

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq................................1, 4

**Regulations**

29 C.F.R. § 778.111(a)............................................................................8, 9

## I.    INTRODUCTION

On or about August 11, 2023, Plaintiff Michael Owusu ("Plaintiff") and Defendant Lasership, Inc. ("Defendant") (together, the "Parties"), reached a settlement in principle in the above-captioned matter. Because this matter involves claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., Plaintiff files the instant Motion to apprise the Court of the basis for determining that the proposed settlement of those claims constitutes a fair and reasonable resolution of a bona fide dispute over FLSA provisions. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982).  Although Defendant continues to deny all liability, it does not oppose this Motion and the requested relief.[1]

Plaintiff respectfully submits this Memorandum in support of his request for the Court to approve the proposed settlement, and request that the Court, upon consideration of the foregoing, approve the Parties' Confidential Settlement Agreement and Release of Claims (hereinafter, "Settlement Agreement"), attached hereto as Exhibit A.

---

[1] On March 20, 2023, Defendant filed a Motion to Compel Arbitration or, in the alternative, to Strike Class and Collective Allegations. ECF Nos. 10, 11 (Motion to Compel). If the Court grants Plaintiff's Motion for Approval and dismisses the case with prejudice, then Defendant's Motion to Compel is moot. However, in the event the case continues for any reason, Defendant maintains its position that Plaintiff's claims are subject to individual, bilateral arbitration or, in the alternative, that the class and collective allegations should be stricken.

## II.    THE SETTLEMENT AGREEMENT REPRESENTS A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE OVER FLSA PROVISIONS

Although the Third Circuit has not addressed whether parties can settle FLSA actions claiming unpaid wages without court approval, district courts within the Circuit have followed the approach endorsed by a majority of courts and assumed that judicial approval is necessary.  Lyons v. Gerhard's Inc., No. 14-cv-6693, 2015 WL 4378514, at *3, n.1 (E.D. Pa. July 16, 2015).  When considering whether to approve a proposed settlement of an FLSA claim, a district court must determine: (1) that the settlement involves a bona fide dispute; (2) that settlement is fair and reasonable to the Plaintiff-employee; and (3) that the settlement does not frustrate implementation of the FLSA in the workplace. See Lyons v. Gerhard's Inc., 2015 WL 4378514, at *2-4; see also Lynn's Food Stores, Inc., 679 F.2d 1350.  As discussed below, the proposed Settlement Agreement clearly satisfies these requirements and, as such, the Court should approve the Parties' Settlement Agreement.

### A.    The Settlement Agreement Concerns a Bona Fide Dispute

When considering whether a proposed settlement agreement resolves a bona fide dispute under the FLSA, District courts look to see whether the agreement "'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute' and is not a 'mere waiver

2

of statutory rights brought about by an employer's overreaching.'" <u>See</u> <u>McGee v.</u> <u>Ann's Choice, Inc.</u>, No. 12-cv-2664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014) (citing <u>Lynn's Food Stores, Inc.</u>, 679 F.2d at 1354). In order to make this determination, the court must be provided with "a description of 'the nature of the dispute (for example, a disagreement over coverage, exemption, or computation of hours worked or rate of pay) resolved by the compromise.'" <u>Brumley v. Camin</u> <u>Cargo Control, Inc.</u>, Nos. 08-cv-1798, 10-cv-2461, 09-cv-6182, 2012 WL 1019337, at *6 (D.N.J. March 26, 2012).

As evidenced by the pleadings, this lawsuit involves a bona fide dispute over the number of hours worked by Plaintiff, a non-exempt Delivery Driver who alleges that he was misclassified as an independent contractor and denied wages and overtime compensation for hours of work performed over forty (40) hours per work week. Plaintiff alleges that he worked on average fifty (50) to seventy (70) hours per work week from in or around July 2020 to in or around December 5, 2022 and that he was paid a piece rate of $2.50 per package delivered regardless of the number of hours worked each work week. <u>See</u> Complaint ¶¶ 44-45, 56-62. Defendant, for its part, contends that Plaintiff is subject to a mandatory arbitration agreement requiring individual bilateral arbitration of his claims (ECF Nos. 10, 11), that he was properly classified as an independent contractor and that, even if re-classified as an employee, was paid for all hours worked. Thus, the Settlement Agreement – through

which Plaintiff stands to recover, even after attorneys' fees, almost two thirds of his potential recovery for unpaid overtime under the FLSA for a willful violation (discussed below) – clearly represents a reasonable compromise of disputed factual issues, and, as such, resolves a "bona fide dispute" under the FLSA.

### B.    The Settlement Is Fair and Reasonable to the Plaintiff-Employee

When evaluating the "fairness" of a settlement in a FLSA collective action, courts in this Circuit have turned to the factors set forth in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975) for the approval of class action settlements under Federal Rule of Civil Procedure 23.  These factors include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  Girsh, 521 F.2d at 157.

It is worth noting that while Plaintiff did file this lawsuit as a collective action pursuant to 29 U.S.C. § 216(b), this case has not been conditionally certified as a collective action, nor have any other individuals expressed their desire to join therein

4

by filing an opt-in consent form with the Court.  As a result, the applicability of the

<u>Girsh</u> analysis to the instant matter is not certain.[2]  Nevertheless, a review of the

<u>Girsh</u> factors applicable to this case clearly demonstrates the fairness of the parties'

proposed settlement in this case.

1.     <u>The complexity, expense, and likely duration of the litigation
       (factor 1)</u>

By reaching a favorable settlement prior to dispositive motions or trial,

Plaintiff seeks to avoid the significant expense, delay, and risks associated with

litigating these claims all the way to judgment.  This lawsuit involves complex

claims under the FLSA.  <u>See Brumley</u>, 2012 WL 1019337, at *11 ("FLSA claims

and wage-and-hour law enforcement through litigation has been found to be

complex by the Supreme Court and lower courts.") (<u>citing</u> <u>Barrentine v. Arkansas-

Best Freight Sys.</u>, 450 U.S. 728, 743 (1981)).

---

[2] <u>See e.g.</u>, <u>Marrano v. Oyster Bay Animal Hosp., P.C.</u>, No. 14-cv-2751, 2015 WL
4715207, at *2 (E.D.N.Y. Aug. 6, 2015) ("It is understandable why the Congress
would require the Court to engage in such a process in the Rule 23 class action
context, where a settlement agreement binds absent class members who have not had
the opportunity to be heard in court . . . However, the concern over absent class
members is not present in this case where an individual plaintiff is seeking to
voluntary dismiss his overtime claim solely on behalf of himself.  The Court notes
the obvious fact that great numbers of civil cases of all categories are settled and
closed without court supervision or approval.  The Court sees no reason why it
should depart from that practice with respect to FLSA settlements without express
statutory language requiring it to do so.").

Preparing and putting on evidence concerning the complex factual and legal issues at trial would have consumed tremendous amounts of time and resources for both sides, as well as required substantial judicial resources to adjudicate the parties' disputes. Additional discovery would have been required by Plaintiff to establish liability and damages, which would have included taking depositions of Defendant's management. A complicated trial would have been necessary, featuring extensive testimony from the upper management of Defendant, the Plaintiff, fact witnesses, and damages experts on both sides. Any judgment would have likely been appealed, thereby extending the duration of the litigation. On the other hand, settlement of this matter makes monetary relief available to Plaintiff in a prompt and efficient manner.

2.    The reaction of the class to the settlement (factor 2)

This factor is clearly inapplicable, where, as here, Plaintiff is seeking merely to settle his own individual claims under the FLSA, the case has not been conditionally certified as a collective action, and no other individuals have opted into the lawsuit.

3.    Stage of the proceedings and the amount of discovery completed (factor 3)

In examining the stage of the litigation at which a settlement is reached, the proper inquiry is "whether the counsel had an adequate appreciation of the merits of the case before negotiating." See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004). Under this standard, Plaintiff and Plaintiff's counsel were

clearly in a position to make the necessary risk assessments in the context of settlement negotiations. At the time the Settlement Agreement was reached, the parties had conducted thorough investigations of the facts and underlying claims in this case. Plaintiff's counsel undertook extensive research and preparation for this case, including participation in numerous discussions with Plaintiff concerning the terms and conditions of his alleged employment and the potential existence of a class of similarly situated workers, collection and detailed investigation of payroll and time records, and review of the relevant statutes and case law.  On the basis of these investigations, counsel engaged in vigorous arms-length negotiations, which ultimately resulted in the Settlement Agreement before the Court.

    4.   <u>Risks of establishing liability and damages (factors 4 and 5)</u>

A trial in this case would involve significant risks to Plaintiff because of the fact-intensive nature of proving liability under the FLSA and in light of the defenses available to Defendant.  The nature of Plaintiff's claims requires him to prove whether he was misclassified as an independent contractor and how many hours he worked in excess of forty (40) hours per work week.  While Plaintiff's counsel believes Plaintiff's claims to be meritorious, counsel is experienced and realistic, and understands the risks involved in demonstrating misclassification of employees and employer liability for work performed in the absence of accurate time records.

7

5.    <u>Risks of maintaining the class action through the trial (factor 6)</u>

Because Plaintiff seeks to resolve this case on an individual, rather than collective or class action basis, this factor is not applicable to the instant matter.

6.    <u>Ability of the Defendant to withstand a greater judgment (factor 7)</u>

Because neither party alleges that Defendant has any degree of financial instability as a justification for the settlement agreement's amount, the ability of Defendant to withstand a greater judgment is irrelevant.  <u>Altnor v. Preferred Freezer Servs., Inc.</u>, 197 F. Supp. 3d 746, 762 (E.D. Pa. 2016).  As such, this factor is inapplicable in this case.

7.    <u>The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation (factors 8 and 9)</u>

Under the Settlement Agreement, Plaintiff stands to recover $22,166.10 in unpaid overtime compensation and liquidated damages, plus an additional $12,833.90 in attorneys' fees and costs under the FLSA, for a total recovery of $35,000.00.

Plaintiff alleges that, under the FLSA, he should have been compensated as a non-exempt employee paid on a piece rate basis.  <u>See</u> 29 C.F.R. § 778.111(a).  First, you total the earnings from the work week from piece rates and all other sources.  <u>Id.</u>  Second, you divide this total by the number of hours worked in the work week to obtain the regular rate for each week.  <u>Id.</u>  Third, you multiply the regular rate by 0.5

8

to calculate the overtime premium. Id. Finally, you multiply the overtime premium by the number of hours worked in excess of forty (40) in each week to determine the amount of overtime owed. Id.

Although not pleaded in the Complaint, going back to the beginning of Plaintiff's alleged employment on or about July 2020, Plaintiff initially estimated that the maximum amount that he could recover in unpaid overtime was approximately $34,194.67 in unpaid overtime and an equal amount in liquidated damages. However, further review of Plaintiff's pay and delivery records produced by Defendant in informal discovery caused Plaintiff to acknowledge that the claimed unpaid overtime was likely substantially less than this amount due primarily to the observation that the timestamps on Plaintiff's delivery records reflected a substantially lower number of hours worked on average each work week.

Thus, Plaintiff's recovery under the Settlement Agreement represents almost two thirds of his potential recovery for unpaid overtime under the FLSA for a willful violation, before even considering the substantial risk that this amount would be greatly diminished after discovery, plus a considerable amount (i.e. $12,833.90) in attorneys' fees and costs. It is Plaintiff's counsel's belief that the aforementioned amount represents an excellent recovery for Plaintiff in light of the significant risks associated with continuing this litigation.

However, even if Plaintiff's recovery under the Settlement Agreement amounted to less than his maximum potential recovery under the FLSA, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 628 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983); see also City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a  satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). As such, this factor clearly weighs in favor of approval of the Settlement Agreement.

## C.   **The Agreement Does Not Frustrate the Implementation of the FLSA in the Workplace**

Finally, the Court should approve the Settlement Agreement because it is a reasonable resolution for Plaintiff and does not frustrate the implementation of the FLSA in the workforce.  In this regard, the Settlement Agreement contains a limited confidentiality clause and a narrowly tailored release of claims.

### 1.  Confidentiality and Non-Disparagement

"Confidentiality and non-disparagement provisions in an FLSA settlement agreement implicate the court's duty to ensure that a settlement furthers the FLSA's implementation in the workplace."  Brown v. Lyndon City Line Diner, Inc., No. 19-cv-1227, 2021 WL 3492990, at *1 (M.D. Pa. Aug. 9, 2021).  Although case law

10

generally favors transparency, courts also recognize "the need for limited confidentiality and non-disparagement." Id.; Berger v. Bell-Mark Techs. Corp., No. 1:17-CV-1836, 2019 WL 1922325, at *3 (M.D. Pa. Apr. 30, 2019) (approving non-disparagement clause). With these principles in mind, this Court has approved limited and narrowly drawn confidentiality provisions as "firmly rooted in the decisional case law throughout this district." Brown, 2021 WL 3492990, at *2 (collecting cases). Indeed, the confidentiality and non-disparagement provisions in the Settlement Agreement are virtually identical to, and arguably less restrictive than, those approved by this Court in two recent cases. Compare Exhibit A ¶¶ 9, 11, with Brown, 2021 WL 3492990, at *2; see also Order, ECF Docket No. 28, Haley v. Bell-Mark Techs. Corp., No. 17-cv-1775 (M.D. Pa. May 6, 2019) (J. Conner) (approving amended settlement agreement with limited confidentiality and non-disparagement provisions); accord Haley v. Bell-Mark Techs. Corp., No. 1:17-CV-1775, 2019 WL 1925116, at *6 (M.D. Pa. Apr. 30, 2019) (approving confidentiality clause); McGee v. Ann's Choice, Inc., No. CIV.A. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) (same); Berger, 2019 WL 1922325, at *3 (approving non-disparagement clause).

   2.    Release of Claims

Courts generally require the parties to limit the scope of the waiver and release provisions in an FLSA settlement agreement to "claims related to the specific

11

litigation." Haley, 2019 WL 1925116, at *6 (citations omitted). "Provisions requiring employees to generally release and waive all future claims against the employers contravene the FLSA objection of maintaining equal bargaining power between employers and employees, thereby 'impermissibly frustrat[ing] the implementation of an otherwise fair and reasonable settlement." Id. (citation omitted). This Court has consistently approved release language in FLSA settlement agreements that is limited to claims related to the plaintiff's alleged employment with the defendant arising before the date that the agreement is approved. See Carts v. Wings Over Happy Valley MDF, LLC, No. 17-cv-915, 2023 WL 4238490, at *4 (M.D. Pa. June 28, 2023). Like the agreement approved by this Court in Carts, the Settlement Agreement's release of claims provision is limited to wage related claims that Plaintiff brought, or those that could have been brought, in this action related to his alleged employment with Defendant up through the date the Court approves the Settlement Agreement. Id.; see also Exhibit A ¶ 8.

For these reasons, the parties' Settlement Agreement does not frustrate the implementation of the FLSA.

D.    **The Award of Attorneys' Fees to Plaintiff's Counsel is Fair and Reasonable Considering the Risk Involved, the Work Performed, and the Considerable Result Achieved**

In this action, Plaintiff's counsel respectfully requests the Court to approve attorneys' fees and costs in the amount of $12,833.90[3] as this figure represents a 35% contingent fee for Plaintiff's counsel's representation of Plaintiff.  In retaining Plaintiff's counsel, Plaintiff entered into a private contingent fee agreement, wherein Plaintiff agreed that Plaintiff's counsel would recover 35% of Plaintiff's award, plus costs.

With respect to this request, "[f]ee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." Aros v. United Rentals, Inc., No. 3:10-cv-73, 2012 WL 3060470, at *4 (D. Conn. July 26, 2012). In scrutinizing the fairness of FLSA settlements, and fees paid thereunder, courts in this district have upheld similar contingency rates agreed upon between a Plaintiff and her counsel as the contingency rate in the case at bar. In Adams, et al. v. Bayview Asset Management, LLC, the Court approved a 40% contingency fee for eight (8) different single-plaintiff cases, conditioned upon Plaintiff's counsel representing via affidavit that the contingency fee agreement existed at the commencement of the representation to verify Plaintiff's counsel bore

---

[3] This figure represents $12,250.00 in attorneys' fees and $583.90 in costs.

all of the risk of loss by proceeding with such litigation.  See ECF Docket Nos. 7,

10-11, Adams, No. 13-cv-5967 (E.D. Pa. 2013); see also Howard v. Phila. Hous.

Auth., 197 F. Supp. 3d 773, 782 (E.D. Pa. 2016) (recognizing that fee awards for

common fund cases generally range from 20-45% of the fund and approving a fee

award equivalent to 32.4% of the single-plaintiff fund).

Percentage of recovery, by which counsel is awarded a fixed portion of the

settlement, is the prevailing method used by courts in the Third Circuit for wage and

hour cases." Carts, 2023 WL 4238490, at *6.  In order to evaluate the reasonableness

of the attorneys' fee award under this method, courts in this Circuit typically turn to

the following factors:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of the
> class to the settlement terms and/or fees requested by counsel; (3) the
> skill and efficiency of the attorneys involved; (4) the complexity and
> duration of the litigation; (5) the risk of nonpayment; (6) the amount of
> time devoted to the case by plaintiffs' counsel; and (7) the awards in
> similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000) ("Each

case is  different, and in certain cases, one factor may outweigh the rest.").

14

1. <u>The Size of the Fund Created and the Number of Persons Benefitted, and the Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or Fees Requested by Counsel (Factors 1 and 2)</u>

As this case is being resolved on an individual basis, only one person is being benefitted by the settlement fund and there are no class members to object to the terms of the settlement. As such, these factors are inapplicable to the instant matter.

2. <u>The Skill and Efficiency of the Attorneys Involved (Factor 3)</u>

As discussed in the Affidavit of Benjamin Salvina, Plaintiff's counsel has significant employment law experience which includes, but is not limited to, handling complex wage and hour collective and class actions. See Affidavit of Benjamin Salvina ¶¶ 5-6, attached as Exhibit B. Moreover, the "single clearest factor reflecting the quality of . . . counsels' services . . . are the results obtained." <u>In re AremisSoft Corp. Sec. Litig.</u>, 210 F.R.D. 109, 132 (D.N.J. 2002). In this regard, the recovery achieved, which represents almost two thirds of his potential recovery for unpaid overtime under the FLSA for a willful violation, before even considering the substantial risk that this amount would be greatly diminished after discovery, is substantial given the risks that counsel would not recover anything in this case, as discussed in more detail below.

3. <u>The Complexity and Duration of the Litigation (Factor 4)</u>

As discussed above in Section I(B)(1), this lawsuit involves complex claims under the FLSA. <u>See</u> <u>Brumley</u>, 2012 WL 1019337, at *11. Moreover, Plaintiff's

15

counsel has achieved the settlement proposed herein only after engaging in vigorous arms-length negotiations between experienced counsel following an in-depth investigation into Plaintiff's claims.

    4.    <u>Risk of Nonpayment (Factor 5)</u>

Plaintiff's counsel undertook this action under a wholly contingent basis and the risk of non-payment has been high throughout this litigation, particularly considering the risks in establishing both liability and damages as presented above in Section I(B)(4). Had this case not settled, Plaintiff's counsel would have vigorously litigated the case without any promise of success or compensation. Assuming that the matter had survived any dispositive motions, Plaintiff's counsel would have expended a substantial amount of money preparing for trial (including hiring experts, engaging in expert discovery, and drafting motions *in limine*) without any guarantee of success at trial. Further, even if Plaintiff succeeded at trial, Defendant likely would have appealed. In sum, there was a substantial risk that Plaintiff and Plaintiff's counsel would recover nothing in this litigation.

    5.    <u>Amount of Time Devoted to the Case by Plaintiff's Counsel and Awards in Similar Cases (Factors 6 and 7)</u>

Courts in this Circuit typically cross-check the requested attorneys' fees award against the attorneys' lodestar amount. <u>Carts</u>, 2023 WL 4238490, at *6. In a percentage-of-recovery case, court apply a multiplier to the lodestar by "dividing the requested fee award by the lodestar amount calculated by the Court." <u>Id.</u> at *7.

While a multiplier of 3 is generally the ceiling for a fee award, a multiplier less than one "reveals that the fee request constitutes only a fraction of the work that the attorney's billed and thus favors approval." Id. (citation omitted).

As detailed in the Affidavit of Benjamin Salvina, Plaintiff's counsel spent approximately 40 hours working on this case from the inception of the litigation to the present. See Exhibit B ¶ 9. Furthermore, a Lodestar cross-check reveals the reasonableness of the award of fees to Plaintiff's legal counsel.  In this regard, the lodestar in this case is $14,000.  See Exhibit B ¶ 9. This lodestar was calculated by multiplying the total number of hours counsel worked on this matter (40) by Plaintiff's counsel's hourly rate of $350.00/hour.  The multiplier in this cases, considering all hours expended by Plaintiff's counsel in the litigation, is therefore 0.92 ($12,833.90/$14,000.00 = 0.92).  Because the lodestar cross-check reveals a multiplier less than 1, the requested fee award favors approval. See Carts 2023 WL 4238490, at *7.  In sum, the award of attorneys' fees and costs to Plaintiff's counsel is fair and reasonable considering the risks involved, the amount of work performed, and the considerable result achieved.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find that the Settlement Agreement reached between the parties represents a fair, reasonable, and adequate resolution of Plaintiff's Fair Labor Standards Act claims

against Defendant, and enter an order, substantially in the form attached hereto as Exhibit C, approving the Settlement Agreement.

Respectfully submitted,

**MARZZACCO NIVEN & ASSOCIATES**

By:    */s/ Benjamin Salvina*
Benjamin Salvina, Esq.
945 East Park Drive, Suite 103
Harrisburg, PA 17111
TEL:  717-231-1640
FAX: 717-231-1650
bsalvina@klnivenlaw.com
*Attorney for Plaintiff*

Dated:  January 28, 2024

18

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin Salvina, Esquire, hereby certify that on January 10, 2024, I caused

a true and correct copy of the foregoing to be sent to the following counsel via the

Court's ECF system:

Charles Andrewscavage, Esq.
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
30 West Monroe Street, Suite 1600
Chicago, IL 60603
candrewscavage@scopelitis.com

James A. Eckhart, Esq.
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
jeckhart@scopelitis.com

Megan Zei
PION LAW
2404 Park Drive, Suite 404
Harrisburg, PA 17110
jdecinti@pionlaw.com
*Attorneys for Defendant*

By:    */s/ Benjamin Salvina*
Benjamin Salvina, Esq.

Dated: <u>January 28, 2024</u>